limits the forfeiture to "live oak and red cedar;" but if the reference contended for be the true construction, then the forfeiture of the vessel is incurred, for transporting any kind of timber cut on the public lands. If timber of any kind, even for fire-wood, were taken on board from an improvement of an occupant, to whom a pre-emptive right was subsequently given by law, the vessel would be forfeited. Such a construction would make the second section inconsistent in its provisions, which ought never to be done by construction. It would impose a forfeiture of the vessel for taking on board timber from reserved lands, from lands not reserved, and then only for taking from unreserved lands, "live oak and red cedar."

It is immaterial what an attorney general may have suggested as necessary or proper to prevent trespasses, at one time, or what may be supposed to have been the intention of congress, from circumstances or facts out of the law; their meaning must be ascertained from the language of the act. And where that language is susceptible of but one construction, no other can be given. As now construed, the law punishes trespassers by fine and imprisonment, when convicted on an indictment; civil actions for trespass may be brought, and under an early act, the troops of the United States may be used in forcing trespassers from the public lands. These remedies would seem to be ample to protect the public property. If, in addition to these, the forfeiture of the vessel used be necessary, congress can so provide. It is enough to say that, in the act under consideration, they have not so provided, in regard to the vessel which shall transport timber from public lands not reserved for naval purposes, unless it be "live oak or red cedar." And such a provision shows that they did not intend to embrace other timber.

The charge against the vessel in the libel is general, of having taken on board a large amount of lumber, and transported it, &c., without an allegation that it was taken from lands reserved for naval purposes, or that it was "live oak or red cedar;" the case, therefore, is not brought within the statute; the procedure for the forfeiture of the vessel cannot be sustained. The decree of the district court is, therefore, reversed, and the libel is dismissed. This decision will not interfere with the procedure of the government against the timber on board of any vessel, which has been taken from the public lands

### Case No. 15,343.

UNITED STATES v. HELLMAN.

[23 Int. Rev. Rec. 387.]

District Court, S. D. New York. 1878.[1]

INTERNAL REVENUE—REPEAL OF LEGACY TAX.

[The act of July 14, 1870 (16 Stat. 261), repealing the legacy tax, did not affect the govern-

ment's rights to a tax which had accrued by the happening of the contingency upon which the legacy passed prior to the date of the repealing act, although the legatee did not become entitled to the possession or enjoyment of the legacy until after that date.]

[Cited in U. S. v. Rankin, 8 Fed. 875.]

This action is brought [against Angelo Hellman] to recover a legacy tax under section 1245, Act June 30, 1864 (13 Stat. 285), as amended by Act July 13, 1866 (14 Stat. 140), the fact being that the tax accrued,—that is, the contingency upon which it arose, the passing of the legacy, occurred,—before October 1, 1870, although the party interested became entitled to the possession or enjoyment of the legacy, and to the beneficial interest in the profits accruing therefrom, after October 1, 1870. The question presented is whether the act of July 14, 1870, § 3 (16 Stat. 257), repealing the tax on legacies and successions on and after October 1, 1870, applies to this case, or is it saved by section 17 of that act (16 Stat. 261)?

Roger M. Sherman, Asst. U. S. Atty.

Lauterbach & Spingarn, for defendant.

BLATCHFORD, District Judge. I do not think the decision in Clapp v. Mason, 94 U. S. 589, covers this case. The facts in this case are like those in Mason v. Sargent [Case No. 9,253], and I concur with Judge Shepley in the views announced by him in his decision in that case. The defendant, being executor, is made liable or "subject" to the tax, and was bound to pay it before paying over the legacies, after the legatees became entitled, in February, 1875, to the possession and enjoyment of the legacies. Judgment is ordered for the plaintiffs on the demurrer, with leave to the defendant to answer in twenty days on payment of costs.

[Subsequently a writ of error was sued out from the circuit court, where the judgment of this court was affirmed. Case No. 6,341.]

UNITED STATES (HELLMAN v.). See Case No. 6,341.

### Case No. 15,344.

UNITED STATES v. HELRIGGLE.

[3 Cranch, C. C. 179.][1]

Circuit Court, District of Columbia. Nov. Term, 1827.

INDICTMENT — OMISSION OF PROSECUTOR'S NAME.

The court in Alexandria county will, on motion, quash an indictment for misdemeanor, unless the name of a prosecutor be indorsed thereon, according to the Virginia statute of the 13th of November, 1792, § 24, although the defendant should have been bound by the recognizance before a justice of the peace to appear in this court to answer for the offence.

[1] [Affirmed in Case No. 6,341.]

[1] [Reported by Hon. William Cranch, Chief Judge.]

Indictment for assault and battery. The defendant had been bound by recognizance before a justice of the peace to appear in this court to answer for the offence.

Mr. Taylor, for the defendant, moved the court to quash the indictment, because the name of a prosecutor was not written at the foot of the indictment before it was sent to the grand jury, according to section 24 of the Virginia act of November 13, 1792, p. 105.

Mr. Swann, for the United States, said that where the party has been recognized to appear in this court to answer for a misdemeanor, his practice has been to send up an indictment to the grand jury without the name of a prosecutor. By section 24 of the act of November 13, 1792, it is enacted as follows: "No information for a trespass or misdemeanor shall be filed in any court but by express order of the court entered on record, nor unless the party supposed to be culpable shall have failed to appear and show good cause to the contrary, having been required to do so, by a summons appointing a convenient time for that purpose, served upon him or left at his usual place of abode; and the name and surname of the prosecutor, and the town or county in which he shall reside, with his title or profession, shall be written at the foot of the information before it be filed; and of every bill of indictment for any trespass or misdemeanor before it be presented to the grand jury." And by section 38 of the same act (page 106), it is enacted, "that in all indictments for assaults and batteries, and other offences not capital, now depending or hereafter to be prosecuted, it shall be lawful for the court before whom the same shall be depending, upon good cause to them shown, to compel the prosecutor to find security for payment of the costs; and if such prosecutor shall fail to give security accordingly, the indictment shall be dismissed with costs." By section 2 of the act of Virginia of December 2, 1795, it is enacted, "that when any presentment shall be made of any offence, by the grand jury, upon the knowledge of two of their body, the names of the grand jurymen giving the information shall be indorsed at the foot of the presentment; and when any presentment, information, or indictment shall be made, by the grand jury, of any offence, upon the testimony of a witness called upon by the court or grand jury to give testimony concerning the same, the name of such witness shall likewise be indorsed thereon; but in none of the cases above mentioned shall the person or persons, so informing, be liable to costs." On the 28th of January, 1802, after the separation of this county from Virginia, the legislature of that state passed an act (page 431) stating that "doubts have arisen whether any information can be filed, or indictment for trespass or misdemeanor be sent to a grand jury, unless the name of a prosecutor be written at the foot of such information

or indictment;" and providing that no prosecutor should be required on an information or bill of indictment for a trespass or misdemeanor filed, or sent to a grand jury, on and in consequence of a previous presentment of a grand jury made on their own knowledge, or on the information of any two of their own body.

THE COURT (MORSELL, Circuit Judge, contra) quashed the indictment.

See the twenty-ninth rule of practice of this court; U. S. v. Shackelford [Case No. 16,260], in this court at April term, 1828; U. S. v. Hollinsberry [Id. 15,380], at November term, 1829; Virginia v. Leap [Id. 16,964], in this court, April term, 1801; U. S. v. Sandford [Id. 16,221], July 14, 1806; U. S. v. Jamesson [Id. 15,466], January, 1802; U. S. v. Singleton [Id. 16,293], June, 1805; U. S. v. Willis [Id. 16,728], November, 1808; U. S. v. Carr [Id. 14,729], November, 1823.

---

## Case No. 15,345.

### UNITED STATES v. HEMMER et al.

[4 Mason, 105.] [1]

Circuit Court, D Massachusetts. Oct. Term, 1825.

REVOLT OF SEAMEN—CONFINEMENT OF MASTER—CONSPIRACY.

1. A confinement of the master within the statute of 1790, c. 9, § 12 [1 Stat. 115], is not limited merely to a seizure of the master, and preventing the movements of his body, or to locking up in a particular place, as a cabin or stateroom, but extends to all restraints of personal liberty in freely going about the ship, by present force or threats of bodily injury.

[Cited in U. S. v. Huff, 13 Fed. 641.]

2. A revolt is an usurpation of the authority and command of the ship, and an overthrow of that of the master or commanding officer. Any conspiracy to accomplish such an object, or to resist a lawful command of the master for such purpose, and any endeavor to stir up others of the crew to such resistance, is an endeavor to commit a revolt within the meaning of the same section of the statute.

[Cited in U. S. v. Haines, Case No. 15,272; U. S. v. Peterson, Id. 16,037.]

Indictment: 1. For confining the master of the ship Mentor, on board of which the defendants [Henry Hemmer and others] were seamen: 2. For endeavoring to commit a revolt on board of the same ship. The facts, as they appeared in evidence, are fully detailed in the opinion of the court on the libel for wages by the same seamen, and need not be here repeated. See The Mentor [Case No. 9,427].

Mr. Blake, U. S. Dist. Atty.

Gay & Bassett, for defendants.

STORY, Circuit Justice, in summing up the facts to the jury, said:

The indictment charges two distinct offences: 1. An unlawful confinement of the

1. [Reported by William P. Mason, Esq.]